■ CYNTHIA PAULMANN, Appellant, v WILLIAM PAULMANN, Respondent. [638 NYS2d 236] —Peters, J. Appeal from an order of the Supreme Court (Connor, J.), entered May 1, 1995 in Columbia County, which granted defendant's application to hold plaintiff in contempt of court.

The parties were married on June 8, 1974 and had two children, Jessica (born 1979) and Lars (born 1981). When they separated, it was agreed that defendant would have physical custody of Jessica and that plaintiff would have physical custody of Lars. The parties reside approximately 3/4 mile from each other. Although they initially tried to agree to a visitation schedule, they ultimately sought court intervention. In August 1993, in connection with their matrimonial action, Supreme Court issued a temporary order providing for defendant to have visitation with his son every other weekend. He testified that he saw his son pursuant to such order until a second order was issued in October 1993 which modified such visitation. Thereafter, he testified that he saw his son sporadically. From late September 1994 through December of that year, he remained at the parties' residence in Maine in an attempt to find work. When he returned, he contended that plaintiff refused to permit the resumption of visitation. Plaintiff professed that from the time of the issuance of the initial order, Lars, diagnosed with mild mental retardation, had refused to see him and had been engaged in counseling. Visitation remained nonexistent until the parties appeared in court on March 28, 1995.

At a conference before Supreme Court on March 28, 1995, scheduled to address various outstanding discovery issues as

well as the lack of visitation between defendant and Lars, the court, after being advised by plaintiff of the child's continued reluctance to visit with his father, stated that having spoken with Lars it was modifying its prior order to include alternate weekends from Friday until Monday. The court recalled, during the hearing, that previous orders had been issued which had been objected to by petitioner. Adamant that defendant be allowed to see his son, the court scheduled a May custody hearing to finally address these issues.

On April 6, 1995, Supreme Court signed an order to show cause for contempt based upon defendant's allegations that plaintiff failed to obey the order of Supreme Court which emanated from the March 28, 1995 conference which provided for visitation by and between defendant and his son. A hearing was held on April 11, 1995. At the hearing, plaintiff testified that shortly before the March 28, 1995 conference, Lars threatened to run away or commit suicide if he were required to see his father. Concerned about his reaction to discovering that he was now ordered to visit with his father, plaintiff contended that she called the Columbia County Department of Mental Hygiene to arrange for an emergency intervention between herself and her son. She did not tell Lars why they were going to the clinic when she picked him up from school, yet assured him that she would explain her reasons in the presence of a counselor. Plaintiff and the counselor both testified that when she advised Lars of the modified visitation order, Lars responded that he would refuse to go because "I hate his guts". This counselor was unaware that Lars had been regularly seen by a different counselor in that agency. Plaintiff called the Columbia County Child Abuse Hotline on the same date to report defendant of suspected child abuse or maltreatment.

On March 31, 1995, the date scheduled for the first weekend visitation, plaintiff testified that when she brought Lars home from school, there was a message on her answering machine from defendant to have Lars call him. Lars advised her that after he was finished working on a school project, he would return the call. Plaintiff testified that defendant called again the next morning, between 9:15 and 9:30 A.M. He was advised that Lars was sleeping and that a message would be left for Lars to call him. According to plaintiff, Lars returned defendant's call, left a message on his answering machine and then accompanied her to do an errand. Upon returning home, she reminded Lars to call his father. Plaintiff testified that when she later questioned him in the afternoon as to whether he had returned the call, Lars said that he left a second message

on the answering machine, this time informing defendant that he was not coming over. Defendant, however, testified that although he has an answering machine, there were no messages from Lars throughout this time.

At the conclusion of the hearing, plaintiff was found guilty of contempt, sentenced to pay a fine of $250 and spend two weeks in jail, although she could "purge herself of this contempt and the sentence therefore by having the subject child ready to be picked up by defendant at plaintiff's residence on Thursday, April 13, 1995 at 4:00 P.M. for visitation with [defendant] until Monday morning, April 17, 1995 at 9:00 A.M.". Plaintiff appeals from the finding of contempt.

It is well settled that a finding of civil contempt, predicated upon a violation of a court order, must be based upon a determination that there existed a lawful court order expressing an " 'unequivocal mandate' " (*Matter of Frandsen v Frandsen*, 190 AD2d 975, 976) and that the person to be held in contempt of such order " 'had actual knowledge of its terms' " (*supra*, at 976, quoting *Graham v Graham*, 152 AD2d 653, 654). It must further be shown that the "offending conduct 'defeated, impaired, impeded, or prejudiced' a right or remedy of the complaining party" (*supra*, at 976, quoting Judiciary Law § 753 [A]).

Our review of the record reveals that plaintiff was fully aware of the terms of the order explicitly providing for defendant's visitation with Lars from Friday to Monday morning. Purportedly fearful of his reaction to the order, she rushed Lars in secrecy to a counselor to advise him of the court's order, simultaneously failing to advise the counselor, at that time, that Lars is a child with mild mental retardation and had been regularly seen at that clinic by a different counselor in connection with this and other issues. She then made a report against defendant to the Child Abuse Hotline on the same date.* We find that this conduct by plaintiff created a heightened state of hysteria which "impaired, impeded, or prejudiced" (Judiciary Law § 753 [A]) the rights of defendant to see his child in violation of the court's order, all without the proffer of a credible excuse (*see, Matter of Wright v Wright*, 205 AD2d 889).

Noting that Supreme Court has been involved with these parties since the commencement of their case and finding ample evidence supporting the findings made by such court, we

---

* This report was deemed to be unfounded by the Department of Social Services.

give deference thereto and decline to disturb the judgment (*see, Matter of Wright v Wright, supra*). We further note that plaintiff was given every opportunity to purge herself of the contempt, the fine and the jail sentence if she would simply agree not to impede or interfere with defendant's rights to visitation. Acknowledging that the court "was in a superior position to decide the extent of the punishment required to enforce its orders" (*supra*, at 892), and that the record reflects plaintiff's consistent resistance to such orders, we decline to disturb an appropriate exercise of discretion.

Accordingly, we affirm the order of Supreme Court. Mercure, J. P., Crew III and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, without costs.